Not trying to rush you, but you can come forward whenever you're ready, Mr. Little. Thank you, Your Honor. May it please the Court, I will address the issues raised in the government's motion to dismiss the case and then allow my colleague to talk about the other issues. Now, this case is not moot under the heightened standard this Court applies when subsequent events that happen on the appeal introduce mootness issues into the case. And that is because it is not absolutely clear that Mr. Vetcher's detention under 1226 will not recur. And the reason that's the case— I'm sorry to interrupt, but just to clarify, the case is moot, it's just whether there's an exception that brings you out of the problem, right? No, Judge Ho— You're not subject to this law anymore. I understand that question, but I actually think that the law, at least this case law, is written when we're talking about this subsequent events change circumstances doctrine, the cases seem to indicate that it's simply not moot. Now, with the capable of repetition yet evading review doctrine, that is a true exception to mootness. I'm not sure if that particularly matters all that much here, but that's my reading of the case law. You're factoring in the recent denial of the stay of deportation, so how does that affect your argument? Yes, Judge Southwick. The stay of deportation didn't include all of the arguments that my client is going to make in his petition for review, and ultimately the question here is, is he going to get any relief on that petition for review? Because practically, if this Court grants him any relief, the very likely next thing it will do is remand back to the BIA, at which time he will once again be subject to detention under 1226. And if I could just highlight one of the arguments, I think a particularly promising argument, that wasn't in his motion for stay but will be briefed in his petition for review, and this is an argument that the Third Circuit has adopted. It's an open question in this Court. It's briefed in our supplemental reply brief on pages 8 through 10, and just briefly, if I could give you an overview, here, one of Mr. Vetcher's grounds before the BIA, one of his arguments was that he was eligible for withholding of removal under 1231b-3, but you're only eligible for withholding of removal if you haven't committed a, quote, particularly serious crime. Now, the Third Circuit has held that only, quote, aggravated felonies count as particularly serious crimes, and here the BIA admitted that Mr. Vetcher's offense of selling hallucinogenic that even though it's not an aggravated felony, we're still going to say this is a particularly serious crime. Now, again, this is an open question in this Court, and when the Court, you know, gets his full briefing on the petition for review and rules on this issue, if it agrees with the Third Circuit, then Mr. Vetcher's detention will recur. Now, I'm not asking, and I want to be clear about this, I'm not asking the Court to fully rule on all of his petition for review grounds. That's not the Court's job here. The Court's job is to take a kind of quick peek, see if there's any chance, any kind of plausible argument here, and to assess whether it's absolutely clear that his detention will not recur, and here, when one of your sister courts of appeals has adopted a view of the law, which this Court adopts as well, would lead to that recurrence of the detention, that seems to well exceed the kind of absolutely clear test, and, in fact, I think it would even, it would also satisfy the capable of repetition yet evading review doctrine. There, the Third Circuit, again, addressed applying the capable of repetition yet evading review doctrine, actually addressed a very similar circumstance in the DIAB case. There, an alien was making the same challenge that my client is here to his detention without a bail hearing under 1226C, but during the course of those proceedings, the underlying conviction that the government was using to hold him under 1226C was actually vacated by the trial court. Government saw this and then conceded that it no longer had a case. It dropped its removal proceedings, but the Third Circuit said no because the detention is capable of repetition, and its reasoning was that the vacature of that conviction was on appeal in the state court system, and the state court could overturn it, at which point the government might once again bring those removal proceedings. Now, here, Mr. Vecher has a case that is at least as strong as that. In fact, it, again, hinges on what a court will do with some arguments in a related case, and we've shown that his arguments are at least plausible. In fact, again, they've been adopted by one court of appeals. If this court doesn't have any further questions, I will turn the podium over to my colleague. Mr. Vey? Good morning. May it please the Court, here. So, setting aside the mootness issue and turning to the merits, this court is now squarely presented with a question that has been driving this case for over three years now. The government claims authority to detain Mr. Vecher under Section 1226C. In fact, the government doesn't just claim that authority, it suggests that it's required to do so under Section 1226C's mandatory detention provisions. It's this issue that Mr. Vecher asked the court to decide today, and that is whether the Constitution allows prolonged detention under 1226C without a bail hearing and without specific findings of dangerousness and the risk of flight. Now, technically speaking, this is an open question or a matter of first impression, both in this circuit and nationwide. But even though there's no binding authority, the Supreme Court has weighed in on tangential issues in a trilogy of cases, Edvaitis, DeMoore, and Jennings. And collectively, these cases provide some insight about how prolonged detention works in the immigration process, even though none of these cases dealt with this exact issue. So first, Edvaitis set the stage for Mr. Vecher's petition by recognizing the serious constitutional issues that arise when detention without a bail hearing becomes prolonged under Section 1231. That's not Section 1226C, which is at issue today. Then, in DeMoore, the Supreme Court actually addressed Section 1226C, but it distinguished between brief and limited detentions that were at issue there and the prolonged detention that's at issue here. And there's two points of that opinion of that case that make that distinction between brief and prolonged detentions absolutely clear. First, the majority based its opinion on statistics that purported to show that the average length of detention under Section 1226C, even when the petitioner appeals to the BIA, was somewhere around five months. And by relying on those stats, the majority implicitly limited the holding to detentions of similar length. And then second, Justice Kennedy's concurrence made this distinction explicit by articulating the distinction between unreasonable detentions and then suggesting that detention would become unreasonable if it is continued or unreasonably delayed was the phrase that he used. And then the third case in this trilogy is Jennings, the most recent of the three. And this case reinforced the distinction between brief and prolonged detention and explicitly teed up this issue. In fact, the Court, after asking for supplemental briefing on this exact constitutional issue, declined to reach the constitutional issue and said, and I'm quoting, that it had no occasion to consider respondents' constitutional arguments on the merits. But even though this is technically an open question, there's still plenty of authority to guide this Court, and it gives resounding support for Mr. Vetcher's contention that prolonged detention without a bail hearing violates due process. Zedvitas itself, in many ways, this conclusion follows a fortiori from there. The question in that case was whether an alien detained under 1231, whose 90-day removal period had already expired, could then be indefinitely held under a separate provision. And that Court held, the Supreme Court that is, held that those aliens who had already had their full statutory appeals process and had already been ordered removed still had a due process interest and were entitled to a bail hearing after six months of detention following their removal period. If that's the case, Mr. Vetcher's case or 1226C detainee's case is at least as strong where they're still undergoing their statutory process. And even looking beyond Zedvitas, six different circuit courts and three Supreme Court justices and even the Solicitor General have agreed that at some point, prolonged detention can run afoul of the due process clause. Taking those in order, the Solicitor General in Jennings said, quoting in their supplemental briefing on the constitutional issue, as the passage of time increases, a court may scrutinize the fit between the means and the ends more closely. And the Solicitor General even went as far to embrace a case-by-case habeas approach to determine whether detention had become unconstitutionally prolonged. Then in the dissent in that case, Justice Breyer's opinion, which was the only one that actually reached the merits of the constitutional claim, agreed with the Solicitor General that prolonged detention under Section 1226C did require a bail hearing after it became unreasonable and prolonged. And in doing so, he echoed the reasoning of the six circuits who had agreed on that principle prior. And those are the only six circuits. In fact, there's no authority to the contrary that exists. And even though Jennings, the Jennings majority, disagreed with those six circuits' application of the constitutional avoidance doctrine and disagreed on, reversed on statutory grounds, it did nothing to implicate or to disagree with, disrupt their constitutional reasoning. So acknowledging the severe constitutional issues that arise with Section 1226C, the question then becomes how to address it in these instances. And, again, those six circuits have provided several different options for this Court to consider, the first being a case-by-case or, excuse me, the first being a bright-line six-month rule that was adopted by the Second and Ninth Circuits, the second being a bright-line rule somewhere beyond six months, some circuits have suggested in the one- to one-and-a-half-year range, and third, a case-by-case habeas approach where the district courts determined whether an individual petitioner's detention had become unreasonably prolonged. And under any of these rules, Mr. Vetcher's detention is clearly prolonged. Looking just firstly to the six-month bright-line rule, the courts that adopt that gain support for that rule from Zedvitas, where the Court imposed such a six-month rule, and also from the Supreme Court's general endorsement of bright-line rules. It's said in times past that those make for more effective administration and avoids the random outcomes that come through case-by-case determination. But if the Court sides with some of the other circuits and would prefer the case-by-case approach, Mr. Vetcher's habeas petition clearly satisfies that. Courts doing that look to three factors, the amount of time, the reason removal proceedings have become protracted, and the foreseeability of these proceedings concluding in the near future. While none of those are determinative, certainly in this case, the four-year detention period for Mr. Vetcher, almost on its own, should satisfy the unreasonability decision in that definition. And even still, looking to the second factor, the reason for the delay, here the reason is clearly that Mr. Vetcher has shown errors in the government's reasoning time and time again and succeeded on his multiple appeals. For that reason, his attention has become prolonged. Thank you. Good morning. May it please the Court, Brian Ward on behalf of the government. Your Honors, we ask that the Court dismiss this case as moot. Mr. Vetcher filed his habeas petition in this appeal to challenge one thing, his detention under 8 U.S.C. 1226C. 1226C is the statute that governs detention of criminal aliens while their removal proceedings are ongoing. And Mr. Vetcher was properly detained under 1226C during his removal proceedings based on his drug distribution conviction. But there's no dispute here that his removal proceedings have now ended. In May, the Board of Immigration Appeals dismissed his last appeal, and he now has an administratively final removal order. Once there are no longer removal proceedings ongoing before the agency and an alien has a final removal order, their detention is governed by a different statute. Does he have a date scheduled for removal? He doesn't have a date scheduled for removal yet, Your Honor, but the government is working on obtaining that. I didn't look at the pleadings on the motion for the stay, but no date was stated, I guess. No date as of yet, Your Honor. But 8 U.S.C. 1231 provides for a reasonable period of time following the entry of a final removal order for the government to be able to obtain travel documents and make arrangements for that removal, which they can't do until there's a final removal order. It seems like there have been issues before. Somebody's been deported, pending petition for review, gets some relief of just how the person would be entitled to come back, just looking at the effect of not staying in removal. What does happen playing this out? If the circuit gives him some relief in the pending petition for review, how does that affect his being back in this country if he's already been removed? So courts have said that even if an individual is removed pending their petition for review, they can continue to pursue that petition from abroad if they want to. And then what would happen ultimately if he was granted some sort of relief or if the removal order was overturned, I don't know the precise answer to that, Your Honor. What they're saying is he might fall back under 1226. If, in fact, he gets some relief, he goes back to the BIA, he goes back to the IJ. But does he come back into this country at that time? Or just for the fact he's getting further consideration in the BIA or IJ level? I don't believe he'd be able to come back into this country just because he was, if his case was remanded to the agency. I'm just trying to get to when would he again be subject to 1226, even if he gets some relief in the petition for review that's pending. It doesn't seem like there's any avenue here where he would likely be subject to 1226C again. So the government is in the process of obtaining travel documents. They did this once before when his initial removal proceedings concluded. Mr. Boettcher refused to assist with those efforts. He didn't fill out a travel application. Nonetheless, the government was able to get a travel document to remove him to his home country. He's raised no argument here that they won't be able to do so again and won't be able to do so in the near future. And so the likeliest outcome here is that his removal order will be executed under 8 U.S.C. 1231. He has a separate petition for review, but as the panel noted, he filed for a stay of his removal pending consideration of that petition, and that stay was denied last week. And the standard for determining whether a stay should be granted pending a petition for review involves an analysis of whether there's any likelihood of success on the merits of the claim. So in denying the stay, the panel that considered the stay motion necessarily determined that he hasn't shown a likelihood of success on his petition for review, his challenge to the final removal order. So there's simply no meaningful relief that this court can grant him related to 1226C now. Whatever the court were to say about 1226C would simply be an advisory opinion about some set of facts that's unlikely to take place or have any effect on Mr. Vetcher. And so this court should dismiss this case for lack of jurisdiction. I'd also note that most of the cases that petitioners cite in their briefing dealing with trying to find an exception to mootness in this case deal with cases of voluntary cessation. So those cases are different than what we have here. Cases of voluntary cessation is where the government or the defendant does something during the course of litigation that eliminates the case or controversy, eliminates the injury, but does it in a way where the injury could recur if the defendant chooses. So in Deopp, for example, the case they raised, in that case they noted that he had been released because his conviction had been vacated, but that decision could be overturned. The court also noted that the government represented that the petitioner in that case had other convictions that might subject them to detention. And so it makes sense in those cases to get more assurances that it's clear that the injury isn't going to recur as soon as the court dismisses the case. That's not what happened here. There was no discretionary decision or voluntary conduct by the government that's eliminated his claim. His claim has simply become eliminated because his removal proceedings have run their course. And by operation of law, once there's no longer removal proceedings before the agency, he's no longer detained under 1226C, he's detained under 1231. So there's nothing that the government did here that should impose that higher burden to show that his 1226C detention is unlikely to recur, even if there doesn't appear to be any reasonable avenue under which he would again be detained under 1226C. So anything the court were to say about 1226C would merely be an advisory opinion. And so we'd ask that this court dismiss this case's move for lack of jurisdiction. Thank you, counsel. Thank you. Your Honor, I think I can clear up a few of your questions. I believe it was Judge Southwick asked what happens if he's deported and then gets relief on his petition for review. This isn't in the record, but it's ICE policy documents. And, of course, Your Honors can research. But my readings of the ICE policy documents is because Mr. Vetcher is a lawful permanent resident, as soon as the order of removal is gone, which is what would happen if this court granted him even partial relief on his petition for review, then immigration would allow him to return to the U.S. And in this instance, given their position, that would put him under detention under 1226C because the removal proceedings would be continuing. Of course, the panel has already indicated, just a motions panel, that there's not a likelihood of success on your petition, on his petition. Yes, Your Honor, but they've, I guess, two points there. One, as I mentioned earlier, that didn't include one of his particularly promising arguments. I mean, he is proceeding pro se, and he's doing a great job as a pro se litigant, but he did not include all of his arguments in the motion to stay, and he plans to do so in his petition for review. So, really, the petition for review is the key here. I will also mention that I believe it is his intention to file a second motion for stay, raising this new argument that I've told the court about. And, thirdly, the motion for stay is a much higher burden than either the absolutely clear or the capable of repetition burden. To get an emergency motion for stay, you have to show a real likelihood of success on the merits. I realize it's not like a preliminary injunction, but it's almost like that when you think about it, whereas even under the capable of repetition test, the court has been very clear that it's less than more likely than not. Now it's more than merely speculative, but it's less than more likely than not. So even though the motion for stay was denied, that does not resolve the mootness issue. One more point of response, and this is changing topics a little bit. I believe the government said that they didn't do anything to make his claim go away. They didn't moot his claim. I don't think that's accurate. If you look at this court's Cooper case, for instance, there the government action mooting the claim was the repeal of a statute, a statute being challenged. That's probably not the traditional government agency stops a prosecution action, but it's still government action that moots the case. Now here the government action that introduced this mootness issue was the BIA entering the final order of removal, and the BIA is an agency that operates under the plenary power of Attorney General Sessions, who's the appellee in this case. So, again, I realize this isn't the traditional voluntary cessation context, but it is a voluntary cessation context even if that standard is limited to voluntary cessation case law, which we now think it is. Well, your friend on the other side cautioned us from issuing an advisory opinion. You seem to be asking us to enter a rather startling opinion that a BIA ruling is the essential equivalent of voluntary cessation. Your Honor, that is one of the routes that this court can go. The case law, my reading of it, and as we've briefed it under the voluntary cessation, or I'm sorry, under the changed circumstances subsequent events doctrine, the courts don't strictly apply that only to voluntary cessation cases. The idea is when there was standing below, because the courts have invested so many resources in this, once it's on appeal, if something happens that introduces a mootness issue, then you have to do the heightened standard. But I don't even want the court to get hung up on that too much because I don't think it particularly matters whether you apply the traditional capable of repetition test or the bond or the absolute certainty test. And I guess lastly, this issue and these types of things that we're talking about, these mootness problems plague these cases. And that's why there's no guidance in this court. There is no published case on the constitutional limits of 1226C detention. And it's because this happens time and again, time and again. Now, we have not found any case where anyone's raised any type of mootness arguments. I assume that's because they're proceeding pro se and perhaps aren't aware. But if this court does not rule on this, it will evade review forever essentially. Thank you, Your Honor. All right, counsel. We thank all of the counsel here and those who appeared before. We thank particularly Mr. Becker.